W. J. HAUBRICH, appellee, v. A. J. JOHNSON, chairman and presiding officer of the BOARD OF REVIEW of Monona County, et al., appellants (and one other case).

No. 47946.

(Reported in 50 N.W.2d 19)

NOVEMBER 13, 1951.

John D. Beardsley and Robert M. Underhill, both of Onawa, for appellants.

Edward E. Baron, of Sioux City, for appellees.

THOMPSON, J.—The plaintiffs, W. J. Haubrich and Martha M. Haubrich, are husband and wife, and in 1949 were each the owners of certain real estate in the town of Mapleton, in Monona County. They prosecuted separate appeals to the board of review from 1949 tax assessments; and upon confirmation of the assessments by the board each appealed to the district court. The cases were consolidated for trial and upon decree being entered reducing the assessments against three parcels of the realty the defendants have appealed to this court. The petitions filed in the district court by each plaintiff were identical, except as to the property described, and the issues are the same.

Plaintiffs made several complaints of illegality of the assessments and there were involved other pieces of realty than those upon which the trial court reduced the amounts. However, reductions were made upon three parcels only, and the one ground upon which plaintiffs' contention was sustained was that the properties were assessed for more than the value authorized by law, and in excess of the real value, and the assessable value. But plaintiffs have not appealed from the ruling of the court refusing to reduce the assessments upon their other properties, or in rejecting their other claimed grounds of illegality; nor do they complain or argue these matters here. The issue therefore resolves itself into an examination of the correctness of the decree reducing the assessments upon the three properties above referred to upon the sole ground of the excessiveness of the amount fixed.

Two of the properties are separate buildings known jointly as the Brown apartments, while the third appears in the record as the Olson building. The 1949 assessment on one of the Brown apartments was $4200, on the other $6680, and on the Olson building $2060, each actual value. The district court reduced the amounts, respectively, to $3200, $5000, and $1500.

Defendants assign two errors: That plaintiffs did not properly present their objections to the County Board of Review, and that the district court therefore had no jurisdiction to hear the

appeals; and second, that as a fact question the court was in error in reducing the assessments upon the evidence of values presented.

I. Defendants' first assignment of error divides into two parts: First, that plaintiffs did not follow the procedure laid down for appeals prescribed by the 1946 Code, sections 405.22 and 405.24, which are said to be mandatory to confer jurisdiction upon the district court; and second, that, even if these sections do not apply, but section 442.5 still governs, plaintiffs did not sufficiently state their objections to the board of review, and so no appeal could be taken from it.

1. The determination of the first complaint set forth in the preceding paragraph involves a construction of section 3, chapter 240, Acts of the Fifty-second General Assembly, enacted in 1947, now appearing as section 442.1 of the Code of 1950. Chapter 240 is the law creating the offices of county assessor and county boards of review. It is apparent that the former section 442.1, providing for local boards of review, was no longer appropriate and that its repeal was necessary when county boards of review were brought into being. But section 3 of chapter 240 says, among other things, that, "The provisions of sections 405.22 and 405.24, Code 1946, shall also apply to appeal *from* county boards of review." (Italics supplied.) It is this clause which forms the basis of appellants' argument at this point.

Chapter 405, brought into being by the Forty-ninth General Assembly, is generally known as the "Des Moines" assessor law. It provides for city assessors in cities having a population of 125,000 or more. If it were not for the above provision of section 3, chapter 240, as enacted by the Fifty-second General Assembly, sections 405.22 and 405.24 would therefore clearly have no application to real estate in the town of Mapleton. We take judicial notice that it is not a city having 125,000 or more population, or, indeed, since chapter 405A permits cities of 10,000 or more population to come under chapter 405 if they so elect, that it is also not within that class. Knudson v. Linstrum, 233 Iowa 709, 712, 8 N.W.2d 495. In addition there is evidence that at the time of the assessments Mapleton had a population of about 1800.

Section 405.22 provides that a property owner aggrieved by his assessment must bring his objections before the board of re-

1240

view in writing, and that his protest must be based upon one or all of five designated grounds. It will be noted that this provides for an appeal *to* the board of review, rather than from it. Section 405.24 is set out herewith:

"Appeals from the local board of review and to the district court shall be followed as provided in sections 442.6 to 442.11, inclusive. *No new grounds in addition to those set out in the protest to the local board of review as provided in section 405.22, can be pleaded, but additional evidence to sustain said grounds may be introduced.* The assessor shall have the same right to appeal and in the same manner as an individual taxpayer, public body or other public officer as provided in section 442.10." (Italics supplied.)

This section deals with appeals *from* the board of review to the district court. Defendants' argument is that, since section 405.22 says that objections must be in writing, and are limited to five specific grounds, and section 405.24 says that no new grounds can be pleaded upon appeal to the district court from the board of review, and since section 3, chapter 240, above referred to, makes the provisions of sections 405.22 and 405.24 applicable to appeals from boards of review, it follows that all procedure, both in filing protests with the board of review and in appealing from its findings, is governed by the two latter sections. It is urged that section 442.5, Code of 1946, is necessarily repealed by implication, because it is repugnant to and in irreconcilable conflict with section 3, chapter 240, and sections 405.22 and 405.24.

We set out section 442.5, so far as material, herewith:

"Any person aggrieved by the action of the assessor in assessing his property may make *oral* or written complaint thereof to the board of review, which shall consist simply of a statement of the errors complained of, with such facts as may lead to their correction." (Italics supplied.)

This section of the code has appeared in our statutory law for many years; and it is defendants' argument that, since it is incompatible with and repugnant to the other three sections above-quoted, under the familiar rule under such circumstances the legislature must be deemed to have intended to repeal the

earlier statute; in this case section 442.5. Concededly, plaintiffs did not comply with sections 405.22 and 405.24 in making their case before the Monona County Board of Review and in taking their appeal; so that if defendants are correct in their view of the applicable statutes, the district court was without jurisdiction.

It is evident that the procedures seemingly outlined in the present section 442.1, enacted as section 3, chapter 240, Laws of the Fifty-second General Assembly, and in sections 405.22 and 405.24 are in conflict with section 442.5. Section 442.5 says that the protest of the taxpayer to the board of review may be oral; section 405.22 that it must be in writing. Both appear upon the statute books of Iowa. If section 442.5 has been repealed, it must be by necessary implication. We must search for the legislative intent.

It must be confessed that the operation of the legislative mind is not always without perplexity to the judicial intelligence. Why it was sought to refer back to the procedure outlined for cities of 125,000 population, where written protests are required, and at the same time to leave unimpaired section 442.5 which says they may be oral is difficult to say. Fortunately, we have for our guidance certain rules governing the interpretation of statutes, and a rather clear indication in the above referred to chapter 240 itself. Section 24 of the same chapter 240 (now section 442.13, Code of 1950), enacted, of course, at the same time as section 3 thereof, says: "The provisions of sections 442.5 [and others], Code 1946, shall apply to the operation of county and city boards of review." Here section 442.5 is specifically referred to and the legislative intent to keep it in force is made plain.

Additionally, there is the rule thus stated in 50 Am. Jur., section 538, pages 545, 546:

"\* \* \* an intent to repeal by implication, to be effective, must appear clearly, manifestly, and with cogent force. The implication of a repeal, in order to be operative, must be necessary, or necessarily follow from the language used, because the last or dominant statute admits of no other reasonable construction. The courts will not hold to a repeal if they can find reasonable ground to hold the contrary; if two constructions are possible, that one will be adopted which operates to support the earlier act, rather than to repeal it by implication."

1242

See also McGraw v. Seigel, 221 Iowa 127, 263 N.W. 553, 106 A. L. R. 1035.

█ We cannot say that the legislative intent to repeal section 442.5 so clearly appears that we can hold it no longer applies. Rather, we think the intent to keep it in force is apparent from section 24, chapter 240, above. Defendants' complaint here is without merit.

█ 2. But defendants say that even under section 442.5 plaintiffs have failed to comply with the necessary procedure. This section requires only that the aggrieved person make oral or written complaint, "which shall consist simply of a statement of the errors complained of." The record shows that W. J. Haubrich, one of the plaintiffs, objected orally to the board of review. He talked first to the board by telephone; then the board called at his office and he protested again. He also wrote the county assessor, telling him that "according to the prices you have put on it [the assessed properties] it is worth a good deal more to you than we think it is to us." Also the letter alleged that some of the properties "are valued higher than even the sale value at the present inflation values." This letter was written on August 12, 1949. Another letter, under date of August 31 of the same year, contained the statement that "we certainly would hate to have to go to court to [obtain] a just valuation."

Defendants say that First National Bank v. City of Council Bluffs, 182 Iowa 107, 112, 113, 161 N.W. 706, 708, is controlling here. It is true that we said in that case:

"The spirit and purpose of this statute [section 1373, Code of 1897, now section 442.5, supra] is that the taxpayer coming before this tribunal for relief must state his grievance with sufficient particularity and must specify his complaint with sufficient certainty to enable the tribunal, supposing it to possess ordinary intelligence, to comprehend and understand the matters of which complaint is made, and to grant the particular relief sought for in the complaint. He is not entitled to have any question determined on appeal, except such as he called upon the tribunal to determine in the first place. The appeal reviews the action of the officer or tribunal from which the appeal is taken."

We think that the situation here meets this test. There is no claim that the defendants did not understand that the plaintiffs were complaining that the valuations on the Brown apartment and Olson building properties were excessive. Marinus Johnson, a member of the county board of review, called as a witness for defendants, said:

"As a member of the Board of Review considering protests on tax valuations in Monona County in 1949 we inspected these properties in issue in this case. It must have been sometime in August while the Board of Review was still in session and before we had completed our determinations."

Again, he testified:

"I and the other members mentioned went over these particular properties in connection with the protests made as to the valuations placed thereon by the County Assessor in 1949."

It appears that the board knew that protests had been made and what the grievance was. This court said, in Burns v. McNally, 90 Iowa 432, 436, 57 N.W. 908, 910:

"If his grievance is understood by the board, it matters not as to the manner in which he presents his case. The board is not a court. The statute requires no pleadings or papers to be filed presenting his objection to the assessment. The proceedings are intended to be, and are, in fact, informal. The statute is intended to afford to an aggrieved taxpayer an opportunity to ask and have a correction of an assessment, and no formalities are required as to the manner of bringing the matter before the board."

This case is cited with approval, and followed, in the two Iowa cases of Schoonover v. Petcina, 126 Iowa 261, 266, 100 N.W. 490, 492, and Wahkonsa Investment Co. v. City of Fort Dodge, 125 Iowa 148, 153, 100 N.W. 517, 518.

The plaintiffs made their complaints sufficiently clear, and the board of review understood them.

II. It remains to determine whether the trial court was right in finding that plaintiffs carried the burden resting upon them to establish that the assessments were excessive, and so in

reducing them. Some review of the evidence upon this point is required.

William J. Haubrich, one of the plaintiffs, testified that he had resided in Mapleton for thirty-nine years; that he operated a lumberyard there, and did construction work and building of all kinds. During the period of his residence in Mapleton he had bought and sold real estate, and was familiar with realty values. The Brown apartments were worth, together, in 1949, $4000. They are two separate frame buildings, formerly schoolhouses. There are three apartments in each building. They were old forty years ago, and were remodeled about twenty years ago. The gross income from the two buildings for 1949 was $829, expense $476, net income $353. This did not include some uncollected rents, but he thought them uncollectible. No depreciation was figured.

The Olson building he bought three years before for $1200, and improved it at a cost of $600. People live in part of it, and the rest he used as a carpenter shop in making window frames. There was no direct income from the carpenter shop, but from the rest of the building there was a gross rental of $892 net, after expense of $352, without figuring depreciation. It is a frame building, moved onto the lots it occupies about thirty-four years before 1949, and was an old building then. At the time he testified as to the values on these properties, the witness did not know the gross rentals from the Brown apartments.

A. R. Kraft, a witness for plaintiffs, was in the insurance and real-estate business in Mapleton. He was familiar with the buildings involved, and with the valuations of real estate. He fixed the value of the two Brown apartment buildings at $7700, and of the Olson building at $1000. He did not claim to have any specialized training in construction costs or replacement costs, and had no figures from which he could show in detail how he arrived at the values.

John R. Welch, the remaining value witness for plaintiffs, was a bank cashier and also engaged in the real-estate and insurance business in Mapleton. He testified that he had become familiar with real-estate values through making bank loans and selling real estate. He was familiar with the properties involved here, and fixed the values at the same figures as did the witness

Kraft, with whom he said he consulted in arriving at them. He said he did not claim to be an expert upon appraisals, but that his opinion was based upon a knowledge of the properties and a recent personal inspection of them, together with his experience gained in the banking and real-estate business.

The county assessor said that he had accepted the figures given him by a professional appraisal firm, E. T. Wilkins & Associates, of Cleveland, Ohio, and had not made a personal inspection of the properties.

For the defendants, Fred A. Herrington, a professional appraiser employed by the Wilkins firm, which had been engaged by Monona County to make an expert appraisal of all properties subject to taxation, testified in detail as to the methods used and the considerations upon which the appraisals were based. The requirements of section 441.4 of the Code of 1946, which provides that in arriving at the actual value of property there shall be taken into consideration "its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property", seem to have been substantially covered, and in great detail. Such items as construction costs, replacement costs, physical and functional depreciation, and other elements affecting actual value were figured, and an effort made to arrive at the value upon a scientific basis. The witness, of course, upheld the valuations fixed by the assessment and confirmed by the board of review.

Marinus Johnson, a member of the board of review, a resident of Mapleton and a contractor and builder, as a witness for defendants, said that he was familiar with the properties and with building costs and values in the town. He fixed the actual value of the Brown apartments in 1949 at $18,000, and of the Olson building at $3500.

██ Appeals to the district court from the findings of the board of review, and to this court from the decree of the district court in this class of cases, are triable de novo. In re Appeal of Dubuque-Wisconsin Bridge Co., 237 Iowa 1314, 1315, 25 N.W.2d 327; Iowa Building Corp. v. Zirbel, 237 Iowa 242, 248, 21 N.W.2d 576; Bennett v. Board of Review, 234 Iowa 800, 801, 13 N.W.2d 351.

1246

■ Under the circumstances existing here, where the assessor did not make a personal inspection of the properties, either by himself or a deputy, but accepted the valuations fixed by a professional appraiser, the presumption in favor of the assessment does not obtain. Iowa Building Corp. v. Zirbel, supra; In re Appeal of Bankers Life Co. v. Zirbel, 239 Iowa 275, 279, 31 N.W.2d 368; Clark v. Lucas County Board of Review, 242 Iowa 80, 96, 44 N.W.2d 748, 757.

■ But the burden was still upon the plaintiffs to prove that the assessments were excessive. Clark v. Lucas County Board of Review, supra; Des Moines Building-Loan & Sav. Assn. v. Bomer, 240 Iowa 1192, 1198, 36 N.W.2d 366. Further, we have held that when, as here, the board of review has confirmed an assessment, a presumption arises that the valuation fixed by it is correct and just. Clark v. Board of Review, supra, at page 97 of 242 Iowa, page 758 of 44 N.W.2d; Benson v. Town of LeClaire, 185 Iowa 506, 508, 170 N.W. 747.

Keeping in mind that the trial court upheld plaintiffs' contentions upon the single ground of excessiveness of the values fixed, we turn to additional established rules of law which we think, with the aid of those set forth in the paragraph immediately preceding, point clearly to the proper solution of the question before us; that is, whether the evidence of record supports the decree entered. In Clark v. Board of Review, supra, is this language (page 97 of 242 Iowa, page 757 of 44 N.W.2d):

■ "The burden on the complaining taxpayer is not met merely by showing a difference of opinion between his witnesses and the assessor, unless it is manifest that the assessment is *grossly* excessive and is a result of the exercise of the will and not of the judgment." (Italics supplied.) .

We said substantially the same in In re Appeal of Dubuque-Wisconsin Bridge Co., supra; and we also said there, page 1316 of 237 Iowa, page 328 of 25 N.W.2d:

■ "If his [the assessor's] action is not arbitrary or capricious or so wholly out of line with actual values as to give rise to the inference that he has not properly discharged his duty the

assessment made by him *and confirmed by the board of review* should not be disturbed by the courts." (Italics supplied.)

In Bennett v. Board of Review, supra, page 810 of 234 Iowa, we also spoke of the rule that plaintiffs have not made a case by showing merely a difference of opinion as to values; and we said further, that the evidence in favor of the complainants must be sufficient to overcome the *presumption* in favor of the valuations of the taxing authorities. We said in Sioux City Bridge Co. v. Board of Review, 192 Iowa 1224, 1225, 184 N.W. 733, that the courts are reluctant to disturb values fixed by taxing authorities. A mere difference in judgment will not authorize a court to set aside an assessment.

Applying the foregoing principles to the case at bar, it must be apparent that plaintiffs did not sustain the burden resting upon them. While we have not said that the complainant in a case of this kind must show his right to relief by evidence that is clear, satisfactory and convincing, it is established that the courts will not lightly overturn the decision of the taxing bodies. The testimony of the witness Herrington shows that the appraisals were made upon the basis of what was thought to be a scientific approach to the subject. Plaintiffs' witnesses, except for Mr. Haubrich himself, do not claim that they considered all of the elements specified in section 441.4. At best, there was merely a difference of opinion, a question of judgment as to the proper valuations. The weight of evidence was not with the plaintiffs.

The cause is reversed for the reasons set out in Division II, and is remanded to the district court of Monona County for decree confirming the assessments as fixed by the board of review.— Reversed.

All JUSTICES concur.